UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN SHORT,

      Plaintiff,

v.                      Case No: 2:15-cv-136-FtM-29MRM

IMMOKALEE WATER & SEWER
DISTRICT, as a govern entity
and EVA J. DEYO, in her
individual capacity as
executive director of
Immokalee Water & Sewer
District,

      Defendants.

---

## OPINION AND ORDER

This matter comes before the Court on review of defendant Immokalee Water & Sewer District's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #51) filed on October 14, 2015. Plaintiff filed a Response in Opposition (Doc. #58) on November 12, 2015, to which Immokalee Water and Sewer District filed a Reply (Doc. #66) on December 4, 2015. Also before the Court is defendant Eva Deyo's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #52) filed on October 19, 2015. Plaintiff filed a Response in Opposition (Doc. #57) on November 12, 2015, to which Eva Deyo filed a Reply (Doc. #62) on November 19, 2015.

**I.**

Plaintiff's Second Amended Complaint[1] (Doc. #48) contains the following allegations:  Plaintiff, John Short ("Short" or "plaintiff"), is an African American who has been employed by defendant, Immokalee Water & Sewer District ("IWSD") since July 1, 1989.  (Id. ¶¶ 1, 5, 8.)  Short is the first and only African American supervisor at IWSD in its 39 years of operation.  (Id. ¶ 11.)  Plaintiff was initially hired as a Wastewater Plant Service Technician.  (Id. ¶ 8.)  After obtaining his Florida Department of Environmental Protection ("DEP") license as a Wastewater Plant Operator, he assumed the position of Licensed Wastewater Plant Operator in 1995.  (Id. ¶ 9.)  Then, after becoming licensed by the DEP to manage Wastewater Plant operations, plaintiff assumed the position of Wastewater Plant Supervisor with IWSD in 2000.  (Id. ¶ 10.)  Plaintiff alleges that since assuming his position as Wastewater Plant Supervisor, and since the arrival of Executive Director Eva J. Deyo ("Deyo") in 2000 as his immediate supervisor,

---

[1] Counsel is reminded that Local Rule 1.05(a) requires:

> [A]ll pleadings and other papers tendered by counsel for filing shall be typewritten, double-spaced, in at least twelve-point type, and, if filed on paper, shall be on opaque, unglazed, white paper eight and one-half inches wide by eleven inches long (8 1/2 x 11), with one and one-fourth inch top, bottom and left margins and a one to one and one-fourth inch right margin.

he has been subjected to racial discrimination and harassment by IWSD through the actions of Deyo. (Id. ¶¶ 7, 12.)

Plaintiff alleges that since 2002 he has been subjected to discriminatory discipline, performance evaluation, compensation, and reduction of job responsibilities. In 2002, Deyo issued plaintiff a disciplinary action form stating Short incompetently performed his duties, which was subsequently found to be baseless by the Board of Directors pursuant to the grievance process. (Id. ¶ 13.) In 2004 and 2005, Deyo again issued disciplinary actions which were later rejected upon review. (Id. ¶¶ 14-15.) After plaintiff's successes in the grievance process, at the end of 2005, the grievance procedures were altered to render Deyo's decisions regarding discipline and work performance to be final and unreviewable. (Id. ¶ 16.) Plaintiff alleges that this modification to the grievance process was in retaliation for his successful complaints about Deyo's discriminatory conduct.

Following the change in grievance procedure, Deyo continued to give plaintiff negative and inaccurate performance evaluations, although they were now unreviewable. (Id. ¶ 17.) In contrast, during this period plaintiff's performance was reviewed by the DEP and he received a 96%. (Id. ¶ 18.)

Plaintiff also alleges that Deyo applied the pay policy in a racially discriminatory manner. In 2005, IWSD's Board adopted a merit based pay policy, which was to be implemented by Deyo. (Id.

¶ 19.)   The policy provided for employee pay increases for: (1) job related professional certifications, (2) cost of living allowance, and/or (3) job performance.  (Id.)  Deyo had the sole authority to grant or deny pay increases based upon professional certifications and job performance.  (Id.)   Cost of living allowance increases were automatic.  (Id.)  In 2005, without any basis, Deyo prevented plaintiff from receiving pay increases by placing him on probation.  (Id. ¶ 20.)  To plaintiff's knowledge, no other IWSD employee was placed on probation in 2005.  (Id. ¶ 21.)

Deyo also hindered Short's job performance pay increases by giving him negative and inaccurate performance reviews.  (Id. ¶ 22.)  Short has the following certifications:  Water Facilities Security & Response Systems, Odor Control, Control Panel, Basic Driver Improvement, Chlorine Safety-Awareness Level, Management of Water/Wastewater Facilities I & II, Keyboarding, CPR, and AED. (Id. ¶ 23.)  Deyo refused to award any pay increases for Short's job related certifications, yet awarded pay increases to non-black supervisors/employees with certifications.  (Id.)  Deyo also refused Short's request for permission to seek additional certifications in Maintenance of Traffic ("MOT") and Backflow Prevention, but approved non-black supervisors/employees' requests to receive the MOT certification, even though it was unrelated to their job positions.  (Id. ¶¶ 24-25.)  Plaintiff alleges that Deyo

approved pay increases, including certification opportunities, for units headed by non-black managers, but not plaintiff's unit. (Id. ¶¶ 26-28.)

On or about May 1, 2010, Short discovered and reported to Deyo that an inadequate number of chlorine samples had been taken by a technician. (Id. ¶ 30.) In response, Deyo filed a disciplinary action report holding Short responsible for failing to complete the tests. (Id. ¶ 31.) In July 2010, Deyo issued two disciplinary reports which were later determined to be unfounded by the IWSD Civil Rights Committee. (Id. ¶ 32.) Despite the findings by the Civil Rights Committee, Deyo was suspended for three days and forced to attend counseling. (Id. ¶¶ 32-33.)

In 2012, IWSD installed software called Net Nanny on all supervisors' computers, a program to block and filter pornography. (Id. ¶ 34.) The software was interfering with the computers' performance and was eventually deactivated on all supervisors' computers, except for Short's. (Id. ¶¶ 34-36.) On or about January 28, 2013, Deyo filed a false disciplinary report against Short alleging that he was using his office computer to watch pornography. (Id. ¶ 37.) Short complained to the Chairman, but the Chairman took no action. (Id. ¶ 38.) Based upon the same allegations, Deyo issued additional disciplinary actions on April 1, 2013 and on October 16, 2013. (Id. ¶ 39.) Deyo again required

Short to obtain counseling at the David Lawrence Center in order to retain his job. (Id. ¶ 41.)

Plaintiff also alleges that Deyo limited his duties to a single department, while still holding him responsible with the DEP for actions occurring outside his department due to his license. (Id. ¶ 43.) In April of 2013, Deyo informed Short that his license was inadequate for his position and limited his authority to only the Water Treatment Plant. (Id. ¶ 44.) Deyo had a non-black, inexperienced, unlicensed individual perform jobs in violation of DEP rules, which Short brought to the attention of DEP Agent David Rhodes. (Id. ¶¶ 45-47.) Upon being notified, Agent Rhodes ordered the project to cease immediately. (Id. ¶ 48.) Plaintiff also alleges that in September 2013, he began the hiring process to fill two Service Tech I positions. (Id. ¶ 50.) Short recommended black applicants for each position, as they were the most qualified. (Id.) Deyo rejected Short's recommendations and hired less qualified, non-black individuals. (Id.)

Short alleges that on June 19, 2013, he filed an EEOC Charge of Discrimination against IWSD alleging racial discrimination, harassment, and retaliation by IWSD and Deyo. (Id. ¶ 53.) The EEOC issued a notice of right to sue on December 2, 2014, which was received by Short on December 5, 2014. (Id. ¶ 54.)

Following receipt, plaintiff filed this action on March 3, 2015. (Doc. #1.) The Complaint has subsequently been amended

twice pursuant to Orders of the Court, resulting in the Second Amended Complaint being the current operative pleading. (Doc. #48.)

Plaintiff's Second Amended Complaint asserts the following 19 claims: (1) Racially Hostile Work Environment in Violation of Title VII against IWSD; (2) Racially Hostile Work Environment in Violation of the Florida Civil Rights Act against IWSD; (3) Racially Hostile Work Environment in Violation of the Civil Right Act, 42 U.S.C. § 1981 against IWSD; (4) Racially Hostile Work Environment in Violation of the Civil Rights Act, 42 U.S.C. § 1981 against Deyo; (5) Racially Hostile Work Environment in Violation of the Equal Protection Clause of the Fourteenth Amendment against IWSD; (6) Racially Hostile Work Environment in Violation of the Equal Protection Clause of the Fourteenth Amendment against Deyo; (7) Discrimination in Compensation, Terms, Conditions, and Privileges of Employment in Violation of Title VII against IWSD; (8) Discrimination in Compensation, Terms, Conditions, and Privileges of Employment in Violation of the Florida Civil Rights Act against IWSD; (9) Discrimination in Compensation, Terms, Conditions, and Privileges of Employment in Violation of the Civil Rights Act, 42 U.S.C. § 1981 against IWSD; (10) Discrimination in Compensation, Terms, Conditions, and Privileges of Employment in Violation of the Civil Rights Act, 42 U.S.C. § 1981 against Deyo; (11) Discrimination in Compensation, Terms, Conditions, and

Privileges of Employment in Violation of the Equal Protection Clause of the Fourteenth Amendment against IWSD; (12) Discrimination in Compensation, Terms, Conditions, and Privileges of Employment in Violation of the Equal Protection Clause of the Fourteenth Amendment against Deyo; (13) Retaliatory Hostile Work Environment in Violation of Title VII against IWSD; (14) Retaliatory Hostile Work Environment in Violation of the Florida Civil Rights Act against IWSD; (15) Retaliatory Hostile Work Environment in Violation of the Civil Rights Act, 42 U.S.C. § 1981 against IWSD; (16) Retaliatory Hostile Work Environment in Violation of the Civil Rights Act, 42 U.S.C. 1981 against Deyo; (17) Retaliatory Work Environment in Violation of the First Amendment against IWSD; (18) Retaliatory Hostile Work Environment in Violation of the First Amendment against Deyo; (19) Intentional Infliction of Emotional Distress against Deyo. (Id.)

## II.

Defendant Deyo first asserts that plaintiff's Second Amended Complaint again violates the Eleventh Circuit's firm stance against shotgun pleadings. (Doc. #52, pp. 4-5.) Deyo argues that the Second Amended Complaint again sets "forth a host of non-relevant and time-barred allegations and impermissibly reincorporates factual allegations and legal conclusions from preceding counts such to render subsequent counts incomprehensible." (Id. at 4.)

The Eleventh Circuit Court of Appeals recently delineated the "four rough types or categories of shotgun pleadings" that have been filed since 1985:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.  The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.  Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (footnotes omitted).  The Second Amended Complaint in this case does not commit any of these four pleading sins.  Defendant Deyo's motion to dismiss as a shotgun complaint is denied.

### III.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted).   To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555.   See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).   This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.   "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012)(internal quotation marks and citations omitted).   Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

"Generally, the existence of an affirmative defense will not support a motion to dismiss," Quiller v. Barclays Am./Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984), aff'd on reh'g, 764 F.2d 1400 (11th Cir. 1985) (en banc) (per curiam) (reinstating panel opinion), because plaintiffs are not required to negate an affirmative defense in their complaint. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). A complaint may be dismissed, however, when the existence of an affirmative defense "clearly appears on the face of the complaint." Quiller, 727 F.2d at 1069. "A complaint may be dismissed if an affirmative defense, such as failure to exhaust, appears on the face of the complaint. Otherwise, exhaustion and other affirmative defenses must be raised in a responsive pleading." Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (citations omitted). See also La Grasta, 358 F.3d at 845 ("[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred") (quoting Omar ex rel. Cannon v. Lindsey, 334 F.3d 1246, 1251 (11th Cir. 2003)); Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008)(same).

## IV.

### A. Claims Pursuant To Title VII of the Civil Rights Act

Counts I, VII, and XIII of plaintiff's Second Amended Complaint allege claims against IWSD under Title VII. (Doc. #48,

pp. 2-9, 12-13, 18-20.)   Count I asserts a claim for a Racially Hostile Work Environment; Count VII asserts a claim for Discrimination in Compensation, Terms, Conditions, and Privileges of Employment; and Count XIII asserts a claim for Retaliatory Hostile Work Environment.   (Id.)   IWSD moves to dismiss these claims because they are time barred, premature, or fail to adequately state claims upon which relief may be obtained under Title VII.   (Doc. #51, pp. 3-5, 7-9, 13-20.)   The Court will address each of the claims in turn.

### (1)   Racially Hostile Work Environment

Count I alleges that plaintiff was subjected to a racially hostile work environment at IWSD from 2002 through the filing of the Second Amended Complaint.   Plaintiff alleges he was subjected to discriminatory discipline, performance evaluations, compensation, and reduction in job responsibilities.   (Doc. #48, pp. 2-8.)

### (a)   Failure to State a Claim

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."   42 U.S.C. § 2000e-2(a)(1).   The "discriminat[ion]" prohibited by Title VII includes the creation of a hostile work environment. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65-66 (1986).

12

To establish a hostile work environment claim under Title VII, plaintiff must allege, and ultimately prove, discriminatory behavior "sufficiently severe or pervasive to alter the conditions of [his] employment." Pa. State Police v. Suders, 542 U.S. 129, 133 (2004) (citation omitted); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  Specifically, plaintiff must allege that: (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment must have been based on a protected characteristic of the employee, such as race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability. Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240, 1248-49 (11th Cir. 2014) (citation omitted); Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010) (en banc).

IWSD asserts that Count I fails to state a claim for Hostile Work Environment under Title VII because plaintiff has not alleged conduct which is sufficiently "severe or pervasive." (Doc. #51, pp. 7-9.)  In making this argument, IWSD only examined the two disciplinary action reports filed in 2013.  (Id. at 8.)  As discussed later, the Court determines this is a far too narrow view of the cause of action.

The Eleventh Circuit recently summarized the contours of the "severe or pervasive" element of a hostile work environment claim:

> To be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive. In evaluating the objective severity of the alleged hostile work environment, we consider (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. But Title VII is not a general civility code; ordinary tribulations of the workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing cannot form the basis of a claim for actionable harassment or hostile work environment. Instead, conduct must be extreme to amount to a change in terms and conditions of employment. Title VII is not a shield against harsh treatment in the workplace; personal animosity is not the equivalent of [race] discrimination.

Corbett v. Beseler, ---F. App'x---, No. 14-11049, 2015 WL 9583808, at *6 (11th Cir. Dec. 30, 2015) (internal quotation marks and citations omitted). The Court finds that plaintiff's allegations are sufficient under this standard.

Plaintiff has alleged that he is a black male who has been subjected to ongoing workplace harassment for over a decade, including discriminatory application of the pay policy, repeated unfounded disciplinary actions (including forced treatment at a mental health facility), elimination of an internal grievance

procedure which he had used successfully to combat discrimination, limitation of his job responsibilities, and negative and inaccurate performance reviews.   (Doc. #48, ¶¶ 1, 12-51.) Plaintiff alleged that this harassment was on account of his race, and that similarly situated non-black supervisors were not subjected to similar treatment.   (Id. ¶¶ 12, 20-21, 25-28, 35, 42, 45, 58.)   Plaintiff has alleged sufficient facts to plausibly establish that the harassment was severe and pervasive, both from a subjective viewpoint and objectively.   The Court finds that plaintiff has sufficiently pled a claim for racially hostile work environment under Title VII.

### (b)   Statute of Limitations for Title VII Claims

Defendant argues that even if the Title VII counts do state claims upon which relief may be granted, they are either untimely or premature.   This requires a discussion of the exhaustion requirements for a Title VII claim and the statute of limitations.

### (i)   Administrative Exhaustion Required

"As a prerequisite to filing suit under Title VII, a plaintiff must file a timely charge of discrimination with the EEOC." Stuart v. Jefferson Cty. Dep't of Human Res., 152 F. App'x 798, 800 (11th Cir. 2005) (citing Mitchell v. Jefferson Cty. Bd. of Educ., 936 F.2d 539, 543 (11th Cir. 1991)).   In a deferral state, like Florida, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the date of the alleged discrimination.

42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1626.7(a); EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002).  Only those claims arising within 300 days prior to the filing of the charge of discrimination are actionable.  Joe's Stone Crabs, Inc., 296 F.3d at 1271 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)).  Untimely claims are barred.  Id.

A distinction is made between Title VII claims alleging discrete acts and those alleging continuing violations.  An EEOC Charge raising a claim based upon discrete discriminatory or retaliatory acts must be filed within 300 days of the discrete act.  Nat'l R.R. Passenger Corp., 536 U.S. at 113.  If not filed within this time period, the discrete discriminatory acts are not actionable, "even when they are related to acts alleged in timely filed charges."  Id.  Continuing violations, on the other hand, are exceptions to this general rule regarding discrete discriminatory acts.  When the allegedly unlawful employment practices amount to a continuing violation, the time period for filing an EEOC charge does not begin until the last occurrence of the discrimination.  Id. at 118; Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1221-22 (11th Cir. 2001).

### (ii)   Date of Plaintiff's EEOC Charge

Plaintiff alleges that he filed his EEOC Charge of Discrimination "[o]n or about June 19, 2013." (Doc. #48, ¶ 53.) IWSD asserts that plaintiff actually filed his EEOC charge on

August 2, 2013, and attaches the Charge of Discrimination from the EEOC to establish this date. (Doc. #51, p. 4; Doc. #51-1.)

When ruling on a 12(b)(6) motion, "a judge generally may not consider materials outside of the four corners of a complaint without first converting the motion to dismiss into a motion for summary judgment." Pouyeh v. Bascom Palmer Eye Inst., 613 F. App'x 802, 808 (11th Cir. 2015) (citing Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005)). "However, a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (citing Horsley v. Feldt, 304 F.3d 1125, 1135 (11th Cir. 2002)).

Here, the EEOC Charge of Discrimination attached to IWSD's Motion to Dismiss is central to the litigation and the authenticity has not been disputed.  The document establishes that plaintiff signed the Charge of Discrimination on August 2, 2013, and there is no indication that anything was filed by plaintiff with the EEOC before that date.  The Court therefore determines for purposes of this motion that the EEOC Charge was filed on August 2, 2013. Given this finding, only those claims arising on or after October 6, 2012, are actionable under Title VII.

17

Defendant asserts that most of the Title VII conduct is barred as untimely because they arose prior to October 6, 2012.[2]   The Court examines each Title VII claim.

(iii)   **Racially Hostile Work Environment**

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"   Nat'l R.R. Passenger Corp., 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)).

> The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened.   It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

Id.   "Where the discrete act is sufficiently related to a hostile work environment claim so that it may be fairly considered part of the same claim, it can form the basis for consideration of untimely, non-discrete acts that are part of the same claim."

---

[2]Defendant also asserts that the time barred claims are not relevant.   Relevancy is not a basis for a motion to dismiss, and even conduct which is time barred would not necessarily be irrelevant.   An employee is not barred "from using the prior acts as background evidence in support of a timely claim."   Nat'l R.R. Passenger Corp., 536 U.S. at 113.

Chambless v. La.-Pac. Corp., 481 F.3d 1345, 1349-50 (11th Cir. 2007). "The pivotal question is whether the timely discrete acts are sufficiently related to the hostile work environment claim." Id. at 1350.

Here, multiple discrete acts were committed after October 6, 2012. Plaintiff alleges defendant filed false disciplinary reports against him on January 28, 2013, April 1, 2013, and October 16, 2013 (Doc. #48, ¶¶ 37-39), and interfered with his assigned work duties and responsibilities on April 19, 2013 and July 12, 2013. (Id. ¶¶ 43-45.) The Court finds that the timely acts alleged in the complaint are sufficiently related to the racially hostile work environment claim, and are sufficient to bring the entire claim within the statute of limitations. Accordingly, "the entire time period of the hostile environment may be considered for the purposes of determining liability." Nat'l R.R. Passenger Corp., 536 U.S. at 117. Defendant's motion to dismiss on this ground is denied.

### (iv) Discrimination in Compensation, Terms, Conditions, and Privileges of Employment

Count VII asserts a claim for discrimination in compensation, terms, conditions, and privileges of employment in violation of Title VII. (Doc. #48, ¶¶ 91-95.) Plaintiff asserts that from August 21, 2012 forward, IWSD discriminated against him in compensation by denying him hourly pay increases given to similarly

situated non-black employees in October, 2013 and October, 2014, and paying him less than similarly situated non-black employees based on past discriminatory compensation decisions, resulting in paychecks which were less than they would have been but for the discrimination. (Id. ¶¶ 92-93.) Plaintiff also alleges that he was discriminated against in the terms, conditions, and privileges of employment when IWSD refused to remove Net Nanny software when it impeded his work performance, required him to obtain mental health counseling as a condition of continued employment, filed unfounded disciplinary actions in January and April, 2013, limited his work responsibilities and authority in April and July, 2013, and refused to hire employees selected by plaintiff. (Id. ¶ 94.)

IWSD asserts that plaintiff may only seek to recover the pay differential for the two year period preceding the filing of the Charge of Discrimination with the EEOC. (Doc. #51, p. 4.) While it is not always clear, plaintiff seems to agree. (Doc. #58, p. 3.)

The Lilly Ledbetter Fair Pay Act of 2009 ("the Act") was intended to "clarify that a discriminatory compensation decision or other practice that is unlawful under such Acts occurs each time compensation is paid pursuant to the discriminatory compensation decision or other practice, and for other purposes." Pub. L. No. 111-2, 123 Stat. 5 (2009). The Act was a direct response to the Supreme Court's decision in Ledbetter v. Goodyear

Tire & Rubber Co., 550 U.S. 618 (2007), which imposed a more restrictive interpretation of the limitations period for challenging discrimination in pay.  Under the Act, an "unlawful employment practice" occurs when: (1) "a discriminatory compensation decision or other practice is adopted," (2) "an individual becomes subject to a discriminatory compensation decision or other practice," and (3) "an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice."  42 U.S.C. § 2000e-5(e)(3)(A).  Thus, the Act provided that "the statute of limitations for filing an EEOC charge alleging pay discrimination resets with each paycheck affected by a discriminatory decision."  Tarmas v. Sec'y of Navy, 433 F. App'x 754, 760 (11th Cir. 2011) (citation omitted).  The Act was signed into law on January 29, 2009, and made retroactive to all Title VII wage discrimination claims pending on or after May 28, 2007.  Pub. L. No. 111-2, § 6, 123 Stat. 5, 7 (2009).

Because each paycheck is deemed a discrete discriminatory employment action, plaintiff is limited to recovery of the differential for those paychecks issued two years before his August 2, 2013 filing of the Charge of Discrimination with the EEOC. Plaintiff's proof of discrimination is not limited to that two year time period, but there can be no liability for paychecks

issued prior to the two year statute of limitations.  Count VII only seeks damages for the period June 19, 2012 forward (Doc. #48, ¶ 97), which is within the two year statute of limitations period. With this understanding of the potential liability period, the motion to dismiss is denied.

### (v)   Retaliatory Hostile Work Environment

IWSD argues that a Title VII claim for retaliation can only relate to retaliation for filing of a formal charge with the EEOC, not retaliation for "participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC." (Doc. #51, p. 19.)  Thus, defendant argues that plaintiff's retaliation claim cannot arise until after the August 2, 2013 EEOC Charge was filed.  (Id.)  Additionally, IWSD argues that the portion of Count XIII alleging discrimination or retaliation for filing his 2013 EEOC Charge must be dismissed because plaintiff has failed to allege he timely filed a second EEOC Charge alleging retaliation or discrimination for filing his first EEOC Charge. (Id.)

The Eleventh Circuit recognized a claim of retaliatory hostile work environment in Gowski v. Peake, 682 F.3d 1299 (11th Cir. 2012).  To establish that claim, a plaintiff must show that: (1) he engaged in a statutorily protected activity; (2) he has been subject to unwelcome harassment; (3) the harassment was based on his engaging in the protected activity; and (4) the harassment

was sufficiently severe or pervasive to alter the terms and conditions of his employment.  Kelly v. Dun & Bradstreet, Inc., ---F. App'x---, No. 15-11888, 2016 WL 370539, at *1 (11th Cir. Feb. 1, 2016) (per curiam).

Title VII prohibits an employer from discriminating against an employee because the employee "opposed any practice" made unlawful by Title VII (the "opposition clause"), or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation (the "participation clause"). 42 U.S.C. § 2000e-3(a); Knott v. DeKalb Cty. Sch. Sys., 624 F. App'x 996, 997 (11th Cir. 2015).   For retaliation to be prohibited under the participation clause, plaintiff must participate in a proceeding or activity that occurs in conjunction with a formal charge to the EEOC or after the filing of a formal charge.  EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000)(participation clause "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC.")  "The opposition clause, on the other hand, protects activity that occurs before the filing of a formal charge with the EEOC, such as submitting an internal complaint of discrimination to an employer, or informally complaining of discrimination to a

supervisor." Muhammad v. Audio Visual Servs. Grp., 380 F. App'x 864, 872 (11th Cir. 2010) (citations omitted).

Count XIII properly alleges retaliatory hostile work environment in violation of Title VII. Plaintiff asserts he was subjected to a retaliatory hostile work environment both for opposing defendant's discriminatory practices and for participating in the EEOC proceedings. (Doc. #48, ¶ 133.) Plaintiff claims he engaged in protected activity beginning in 2002 by complaining to the IWSD Board about discrimination by Deyo, and was retaliated against beginning in 2005 by the elimination of the grievance procedure which was the vehicle of his protected activity. (Id. ¶ 126.) Plaintiff alleges that from 2005 forward, defendant engaged in a continuous course of retaliation. (Id. ¶ 129.) These claims are properly brought under the opposition clause. Plaintiff also asserts that he was retaliated against after he filed his EEOC Charge of Discrimination in 2013. (Id. ¶¶ 130-32.) These claims are properly brought under the participation clause.

Defendant also argues that plaintiff failed to exhaust his administrative remedy as to retaliation based upon the EEOC Charge of Discrimination. Within Count XIII, plaintiff has alleged that all conditions precedent to bringing suit have been satisfied. (Id. ¶ 135.) This is sufficient for pleading purposes. Fed. R. Civ. P. 9(c).

IWSD points out that plaintiff has not alleged that he filed any other EEOC Charge, and does not suggest that he filed another EEOC Charge. (Doc. #51, pp. 4-5; Doc. #66, pp. 3-6.)  Even if this is so, it is doubtful that another administrative charge needed to be filed with the EEOC.  The Eleventh Circuit has held that

> it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.
>
> There are strong practical reasons and policy justifications for this conclusion.  It is the nature of retaliation claims that they arise after the filing of the EEOC charge.  Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case-a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII.

Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir. 1988) (quoting Gupta v. E. Tex. State Univ., 654 F.2d 411, 411 (5th Cir. Unit A Aug. 1981)).

### (vi)    Liability For Actions After August 2, 2013

IWSD also argues throughout its Motion to Dismiss that claims for actions occurring after plaintiff filed his EEOC Charge are premature and not actionable in this case.  (See, e.g., Doc. #51, pp. 4-5, 15 ("Plaintiff's claims of discriminatory pay in October 2013 and 2014 are premature as he has not exhausted the administrative remedies.")).  The Court disagrees.

Courts do not require the filing of another EEOC Charge for actions that arise out of the allegations of an already filed EEOC Charge.   The Eleventh Circuit has held that "[a] plaintiff's judicial complaint is limited by the scope of the EEOC investigation that 'can reasonably be expected to grow out of the charge of discrimination.'" Ramon v. AT & T Broadband, 195 F. App'x 860, 865 (11th Cir. 2006) (quoting Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004)).   "[T]he allegations in a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to allegations in the charge and growing out of such allegation during the pendency of the case before the Commission." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970) (internal quotation marks and citations omitted).   The scope of the EEOC charge should not be strictly construed.  Gregory, 355 F.3d at 1280.   The allegations in plaintiff's Second Amended Complaint encompass discrimination like or related to the allegations in the Charge of Discrimination, and are therefore properly brought in this action.

### (2)  Discrimination in Compensation, Terms, Conditions, and Privileges of Employment

IWSD argues that Count VII fails to state a claim for discrimination in compensation, terms, conditions, and privileges of employment because plaintiff has failed to allege that (1) he

was subjected to an adverse employment action[3], (2) IWSD treated similarly situated employees outside of his class more favorably, and (3) he was qualified to receive the higher wage. (Doc. #51, pp. 15-16.) The Court disagrees.

To state a claim for intentional discrimination in compensation under Title VII, a claimant must allege that: "(1) []he belongs to a racial minority; (2) []he received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) []he was qualified to receive the higher wage." Cooper v. S. Co., 390 F.3d 695, 735 (11th Cir. 2004), overruled on other grounds, Ash v. Tyson Foods, Inc., 546 U.S. 454, 457 (2006). In compensation discrimination claims, the payment of lesser wages takes the place of an adverse employment action, and in and of itself constitutes an adverse employment action. See Cooper, 390 F.3d at 735 (replacing adverse employment action with payment of lesser wages when stating the elements of a claim for discrimination in compensation). Additionally, "a poor performance evaluation that directly results in the denial of a pay raise of any significance clearly affects an employee's

---

[3]Generally, an adverse employment action must involve "an ultimate employment decision . . . or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (internal quotation marks and citation omitted).

compensation and thus constitutes an adverse employment action under Title VII." Crawford v. Carroll, 529 F.3d 961, 971 (11th Cir. 2008) (citing Gillis v. Ga. Dep't of Corr., 400 F.3d 883, 888 (11th Cir. 2005)).

Here, plaintiff has alleged that he received a lesser wage because of racial discrimination (Doc. #48, ¶¶ 17-28, 92-94) and that his poor evaluations/disciplinary actions and his compensation are inextricably intertwined. (Id.) As a result of the negative and inaccurate evaluations and disciplinary measures, plaintiff alleges he suffered an adverse employment action directly connected to his compensation. Accordingly, plaintiff has plausibly alleged both a lower actual wage and an adverse employment action under Title VII.

IWSD next argues that plaintiff has failed to allege that IWSD treated similarly situated employees outside of plaintiff's class more favorably, or that he was qualified to receive the higher wage within the time period. (Doc. #51, p. 15.) The Court finds neither argument is accurate. Plaintiff has alleged that similarly situated, non-black individuals received pay raises and received pay increments for certifications while he did not. (Doc. #48, ¶¶ 20-28.) Plaintiff has also alleged that he was qualified to receive pay raises, and would have received the merit based pay increases but for the inaccurate negative performance reviews. (Id. ¶¶ 20-22.)

The Court finds that plaintiff has plausibly stated a claim for discrimination in compensation, terms, conditions, and privileges of employment. Accordingly, IWSD's Motion to Dismiss Count VII is denied.

### (3) Retaliatory Hostile Work Environment

As previously stated, to establish a retaliatory hostile work environment claim, a plaintiff must show that: (1) he engaged in a statutorily protected activity; (2) he has been subject to unwelcome harassment; (3) the harassment was based on his engaging in the protected activity; and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment. Gowski, 682 F.3d at 1311. IWSD attacks plaintiff's retaliatory hostile work environment claim on the basis that plaintiff has failed to allege an adverse employment action. (Doc. #51, pp. 18-20.)

Plaintiff has alleged, among other things, that he suffered retaliation in the following forms: limitation of work responsibilities and duties, disciplinary and negative reports resulting in denial of merit pay increases, denial of pay raises to which he was entitled, and installation of software on his computer that impeded his work performance. (Doc. #48, ¶ 129.) Accordingly, the Court finds that plaintiff has plausibly alleged an adverse employment action and IWSD's Motion to Dismiss Count XIII is denied.

**B. Claims Pursuant To Florida Civil Rights Act**

IWSD similarly alleges that plaintiff's corresponding Florida Civil Rights Act ("FCRA") claims (Counts II, VIII, XIV) are time barred, premature, and/or fail to state a claim for which relief may be granted as to any of these claims. (Doc. #51, pp. 5-9, 13-20.) While the time to exhaust administrative remedies is 365 days under the FCRA, Fla. Stat. § 760.11(1), the analysis is otherwise the same as under Title VII. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1271 (11th Cir. 2010) (citing Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998)). Therefore, IWSD's Motion to Dismiss these Counts II, VIII, and XIV is denied.

**C. Claims Pursuant to 42 U.S.C. § 1981**

Counts III, IX, and XV purport to bring § 1981 claims against IWSD pursuant to 42 U.S.C. § 1983 for racially hostile work environment, discrimination in compensation, terms, conditions, and privileges of employment, and retaliatory hostile work environment. (Doc. #48, pp. 9-10, 14-15, 21.) Counts IV, X, and XVI purport to bring similar § 1981 claims against Deyo individually. (Id. at 10, 15-16, 22.)

**(1)  § 1981 Claims Against IWSD**

Title 42 U.S.C. § 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as

is enjoyed by white citizens." Section 1981 encompasses retaliation claims. <u>CBOCS W., Inc. v. Humphries</u>, 553 U.S. 442, 446 (2008).

IWSD first argues that plaintiff's § 1981 claims against it must be dismissed because IWSD is a public entity and § 1981 does not provide a cause of action against state actors. (Doc. #51, pp. 6-7.) Plaintiff counters that he "has not sued IWSD directly under Section 1981, but rather has asserted his Section 1981 rights through 42 U.S.C. § 1983." (Doc. #58, p. 13.)

It is well established that there is no cause of action against state actors under 42 U.S.C. § 1981. <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 733 (1989). Section 1983 "constitutes the exclusive remedy against state actors for violations of the rights contained in § 1981." <u>Butts v. County of Volusia</u>, 222 F.3d 891, 893 (11th Cir. 2000) (citing <u>Jett</u>, 491 U.S. at 731-32).

Within Count III, plaintiff has included the following language: "IWSD has subjected Short to a racially hostile work environment, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as made applicable to units of local government by the Civil Rights Act of 1871, 42 U.S.C. § 1983." (Doc. #48, ¶ 69.) Similarly, in Counts IX and XV plaintiff has either included or incorporated a paragraph into his claims indicating that he is bringing these claims under § 1981 against IWSD pursuant to § 1983. (<u>Id.</u> ¶¶ 2, 101, 142.) The Court finds that this is sufficient to

establish that plaintiff is properly bringing his claims pursuant
to § 1983.

IWSD next argues that plaintiff's § 1983 claims under Counts
III, IX and XV are duplicative of plaintiff's § 1983 claims under
Counts V, XI, and XVII. (Doc. #66, pp. 6-7.)

While the elements of an Title VII discrimination claim are
the same as plaintiff's discrimination claims brought under the
Equal Protection Clause and 42 U.S.C. § 1983, see Bryant v. Jones,
575 F.3d 1281, 1296 n.20, 1307 (11th Cir. 2009); Crawford, 529
F.3d at 970; and Smith v. Auburn Univ., 201 F. Supp. 2d 1216, 1227
(11th Cir. 2002), each claim asserting a different legal basis may
stand on its own. Fed. R. Civ. P. 8(d)(2). Accordingly, the Court
declines to dismiss plaintiff's § 1983 racial discrimination
claims as duplicative of his Equal Protection claims.

IWSD vaguely argues that plaintiff has failed to sufficiently
allege claims for hostile work environment, discrimination in
compensation, terms, conditions, and privileges of employment, and
retaliatory hostile work environment. (Doc. #51, pp. 13-20.) As
IWSD has acknowledged, the elements of a claim of discrimination
under Title VII and section 1983 are the same. Rice-Lamar v. City
of Ft. Lauderdale, 54 F. Supp. 2d 1137, 1145 (S.D. Fla. 1998).
Accordingly, the analyses supra in regard to the sufficiency of
plaintiff's claims under Title VII are equally applicable here.

**(2)  § 1981 Claims Against Deyo**

Deyo moves to dismiss plaintiff's § 1981 claims on the basis that the § 1981 claims are merged into plaintiff's § 1983 claims, and thus must be dismissed as duplicative. (Doc. #52, p. 10.)  Deyo further argues that plaintiff's exclusive remedy is pursuant to § 1983 since Deyo is a state actor. (Id.)

As previously held in regard to plaintiff's claims against IWSD, the Court finds that plaintiff has sufficiently alleged that he is bringing his § 1981 claims against defendants pursuant to § 1983.  (Doc. #48, ¶¶ 75, 113, 149.)  Further, the Court again holds that plaintiff's claims under § 1981 brought pursuant to § 1983 and plaintiff's claims for violation of the Equal Protection Clause pursuant to § 1983 are properly pled under Rule 8(d)(2).

**D. Claims Pursuant to Equal Protection Clause**

Counts V and XI allege claims for racially hostile work environment and discrimination in compensation, terms, conditions, and privileges of employment in violation of the Equal Protection clause against IWSD. (Id. at 10-12, 16-18.)  Counts VI and XII allege the same claims against Deyo individually. (Id. at 12, 18.)

**(1)  Claims Against IWSD**

IWSD moves to dismiss plaintiff's Equal Protection claims on the basis that plaintiff has failed to allege a custom or policy by IWSD.  (Doc. #51, pp. 9-13.)  The Court finds that a custom or policy is properly alleged in the Second Amended Complaint.

A local government may be held liable under § 1983 only "if the plaintiff shows that a 'custom' or 'policy' of the municipality was the 'moving force' behind the constitutional deprivation." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–94 (1978)).  The government entity "must be found to have *itself* caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory." Skop v. City of Atlanta, 485 F.3d 1130, 1145 (11th Cir.2007) (citing Monell, 436 U.S. at 694–95)).  A municipality's liability is limited to "acts which the municipality has officially sanctioned or ordered." Pembaur v. City of Cincinnatti, 475 U.S. 469, 480 (1986).  There are several ways to establish municipal liability under § 1983. Hoefling v. City of Miami, ---F.3d---, No. 14-12482, 2016 WL 285358, at *6 (11th Cir. Jan. 25, 2016).

Municipal liability exists for decisions by individuals with final policymaking authority with respect to the subject matter in question. Pembaur, 475 U.S. at 480-82.  Whether an official has final policymaking authority is a question of state law. Id. at 482.  Additionally, pursuant to a delegation theory, municipal liability may attach when final policymaking authority is delegated to a subordinate and the "subordinate's discretionary decisions are not constrained by official policies and are not subject to review." Mandel v. Doe, 888 F.2d 783, 792 (11th Cir.

1989) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 125-28 (1988)). Further, municipal liability can be established through ratification of conduct "when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." Matthews v. Columbia County, 294 F.3d 1294, 1297 (11th Cir. 2002). "The final policymaker, however, must ratify not only the decision itself, but also the unconstitutional basis for it." Id. (citing Gattis v. Brice, 36 F.3d 724, 727 (11th Cir. 1998)).

Plaintiff alleges that the discrimination and harassment has been "carried out by Defendant IWSD's chief executive officer, Defendant Deyo, with full authority of the IWSD, and with unreviewed discretion granted by the IWSD to act on its behalf." (Doc. #48, ¶¶ 81-82, 84, 120.) Viewing the factual allegations in a light most favorable to the plaintiff, the Court finds that plaintiff has sufficiently alleged a basis for municipality liability under § 1983.

### (2) Claims Against Deyo

Deyo asserts that Counts VI and XII of plaintiff's Second Amended Complaint fail to state claims for violation of Equal Protection claims under 42 U.S.C. § 1983 against her because plaintiff has failed to allege a discriminatory purpose or intent, or that the harassment was sufficiently severe or pervasive. (Doc. #52, pp. 5-10.) The Court disagrees.

"[D]iscrimination claims, including hostile work environment claims, brought under the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, are subject to the same standards of proof and employ the same analytical framework." Bryant, 575 F.3d at 1296 n.20, 1307. Accordingly, the Court's findings in regard to plaintiff's Title VII discrimination claims are applicable here.  The only difference is that in addition to establishing the elements for a discrimination claim under Title VII, the claimant must also allege that the defendant was acting under color of state law and with a discriminatory purpose or intent.  Watkins v. Bowden, 105 F.3d 1344, 1355 (11th Cir. 1997).

The Court finds that plaintiff has sufficiently alleged that Deyo was acting under color of state law.  (See Doc. #48, ¶¶ 79, 81, 89, 123.)  Additionally, Plaintiff has alleged that Deyo made disciplinary and other employment decisions based solely on Short's race.  (Id. ¶ 42, 51.)  The Court finds that plaintiff has plausibly alleged a discriminatory purpose or intent on behalf of Deyo.

**E.  Claims Pursuant to First Amendment**

Counts XVII and XVIII allege claims for retaliatory hostile work environment in violation of the First Amendment against IWSD and Deyo, respectively.  (Id. ¶¶ 151-65.)  IWSD argues that plaintiff has failed to state a claim for retaliatory hostile work

environment in violation of the First Amendment because plaintiff fails to allege:  that he spoke as a private citizen on a matter of public concern, his interests as a citizen outweigh the interest of IWSD as the employer, and his speech played a substantial or motivating role in IWSD's decision to take an adverse employment action. (Doc. #51, pp. 20-23.)  Deyo asserts similar arguments. (Doc. #52, pp. 10-12.)

A First Amendment claim for retaliation is "governed by a four-stage analysis."  <u>Moss v. City of Pembroke Pines</u>, 782 F.3d 613, 617 (11th Cir. 2015).

> First, we consider whether Plaintiff's speech was made as a citizen and whether it implicated a matter of public concern.  If this first threshold requirement is satisfied, we then weigh Plaintiff's First Amendment interests against the City's interest in regulating his speech to promote the efficiency of the public services it performs through its employees.  The above two issues are questions of law that are decided by the court.  The court's resolution determines whether Plaintiff's speech is protected by the First Amendment.
> If his speech is so protected, the third stage of the analysis requires Plaintiff to show that it was a substantial motivating factor in his termination.  If Plaintiff is able to make this showing, the burden shifts to the City to prove that it would have terminated Plaintiff even in the absence of his speech.  Because these final two issues, which address the causal link between Plaintiff's speech and his termination, are questions of fact, a jury resolves them unless the evidence is undisputed.

<u>Id.</u> at 617-18 (internal quotation marks and citations omitted). In order to satisfy the first requirement, the public employee must speak both on a matter of public concern and as a private

citizen.  Garcetti v. Ceballos, 547 U.S. 410, 419-20 (2006).  If
this requirement is not satisfied, then there is no First Amendment
protection for the speech.  "[W]hile the First Amendment invests
public employees with certain rights, it does not empower them to
'constitutionalize the employee grievance.'"  Id. at 420 (quoting
Connick v. Myers, 461 U.S. 138, 154 (1983)).

In the instant case, plaintiff has alleged that he was
retaliated against for (1) making complaints of race
discrimination and harassment and (2) filing an EEOC Charge of
discrimination alleging race discrimination and retaliation.
(Doc. #48, ¶¶ 126-35, 152-58, 160-65.)  The Eleventh Circuit
rejected a similar claims in Morgan v. Ford, 6 F.3d 750 (11th Cir.
1993).  In Morgan, the plaintiff alleged retaliation in violation
of the First Amendment as a result of complaints of sexual
harassment and argued that her complaints involved a public concern
"because sexual harassment in the workplace is a matter of vital
social interest."  Id. at 754.  While the Eleventh Circuit agreed
that sexual harassment is a matter of important social interest,
the Court explained that the essential inquiry is "whether the
purpose of [the plaintiff's] speech was to raise issues of public
concern, on the one hand, or to further [his] own private interest,
on the other."  Id.  "An employee's speech will rarely be entirely
private or entirely public.  Rather than categorize each phrase
the employee uttered, we 'consider whether the speech at issue was

made primarily in the employee's role as citizen, or primarily in the role of employee.'" Id. at 755 (quoting Kurtz v. Vickrey, 855 F.2d 723, 727 (11th Cir. 1988)).   The Court in Morgan ultimately held that the plaintiff's speech was not entitled to First Amendment protection as it primarily related to her private employee grievance.  Id. at 754-55.

While racial discrimination in the workplace is a matter of important social interest, plaintiff's speech focused on how Deyo behaved toward him and affected him personally.  Plaintiff has not alleged facts tending to show he raised issues of discrimination in order to invoke public interest or to relate his concerns about racial discrimination to the public.  Plaintiff complained of discrimination in order to improve his own work environment.  The Court finds that "the main thrust of [his] speech took the form of a private employee grievance."  Id. at 755.  Since the first prong of the inquiry is not satisfied, the Court need not continue with its analysis.  Accordingly, Counts XVII and XVIII of plaintiff's Complaint are dismissed without prejudice.

**F. Claim of Intentional Infliction of Emotional Distress**

Count XIX of plaintiff's Complaint asserts a claim for Intentional Infliction of Emotional Distress (IIED) against Deyo. (Doc. #48, ¶¶ 166-70.)  Deyo moves to dismiss this claim on the basis that plaintiff has failed to allege that Deyo intended to cause plaintiff emotional distress or knew that her actions would

result in severe emotional distress, and that the allegations are not sufficient to establish that Deyo's conduct exceeded all bounds tolerated by a civilized society. (Doc. #52, pp. 12-15.) The Court agrees with Deyo's last point.

"The tort of intentional infliction of emotional distress can undoubtedly arise in the context of employment discrimination." Vamper v. United Parcel Serv., Inc., 14 F. Supp. 2d 1301, 1306 (S.D. Fla. 1998) (citing Vernon v. Med. Mgmt. Assocs. of Margate, 912 F. Supp. 1549, 1558-59 (S.D. Fla. 1996)). Florida first recognized the tort of intentional infliction of emotional distress in Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277 (Fla. 1985). In order to state a claim for intentional infliction of emotional distress under Florida law, a plaintiff must plausibly allege: "(1) deliberate or reckless infliction of mental suffering, (2) outrageous conduct that (3) caused the emotional distress, and (4) that the distress was severe." Tillman v. Orange County, 519 F. App'x 632, 636 (11th Cir. 2013). For conduct to be sufficiently outrageous, it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Lopez v. Target Corp., 676 F.3d 1230, 1236 (11th Cir. 2012) (quoting Restatement (Second) of Torts § 46 cmt. d (Am. Law Inst. 1965)). Whether the alleged conduct satisfies this high standard is a legal question "for the court to decide as a matter of law."

Vance v. S. Bell Tel. & Tel. Co., 983 F.2d 1573, 1575 n.7 (11th Cir. 1993) (quoting Baker v. Fla. Nat'l Bank, 559 So. 2d 284, 287 (Fla. 4th DCA 1990)); see also Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 595 (Fla. 2d DCA 2007).

The Court finds that the conduct alleged within plaintiff's Second Amended Complaint fails to rise to the level of outrageousness required for a claim of IIED. Here, plaintiff has alleged that he was subjected to a discriminatorily applied pay policy, issued unfounded discriminatory actions, his job duties were limited, and he was accused of watching pornography on his work computer and ordered to seek treatment for same. (Doc. #48, ¶¶ 1-51.) While such conduct, if true, is clearly offensive, it does not rise to the level of extreme and outrageous required to support a claim for IIED. See Williams v. Worldwide Flight SVCS., Inc., 877 So. 2d 869 (Fla. 3d DCA 2004) (finding that repeated racial epithets, false disciplinary reports, job termination threats, and assignment to dangerous duties were objectionable and offensive but did not rise to level of extreme and outrageous); Johnson v. Thigpen, 788 So. 2d 410 (Fla. 1st DCA 2001) (finding repeated sexually explicit comments and requests accompanied by forced sexual contact in the workplace was sufficient to state an IIED claim); Nims v. Harrison, 768 So. 2d 1198 (Fla. 1st DCA 2000) (finding threats in newsletter to kill and rape teacher and her

children was sufficiently outrageous to support IIED claim). Accordingly, Count 19 is dismissed without prejudice.

Accordingly, it is now

**ORDERED:**

1. Defendant Immokalee Water & Sewer District's Motion to Dismiss Plaintiff's Second Amended Complaint with Incorporated Memorandum of Law (Doc. #51) is **GRANTED in part and DENIED in part.**

2. Defendant Eva Deyo's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #52) is **GRANTED in part and DENIED in part.**

3. Counts 17 and 18 of plaintiff's Second Amended Complaint are **dismissed without prejudice**; Count 19 of plaintiff's Second Amended Complaint is **dismissed without prejudice.** The Motions are otherwise denied.

4. Defendants shall have **FOURTEEN (14) DAYS** from the date of this Opinion and Order to file a responsive pleading.

**DONE AND ORDERED** at Fort Myers, Florida, this __25th__ day of February, 2016.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record